Common Pleas Court of Belmont County.

## W. C. Cook v. M. K. Ewers et al.

(Decided March 9, 1929.)

*W. J. Walker* and *J. C. Skaggs,* for plaintiff in error.

*George C. McKelvey* and *Thornburg & Lewis,* for defendant.

Cowen, J.

This case was submitted on demurrer to the petition.

In order to present the question that is raised by the demurrer it is necessary to go into the allegations of the petition somewhat fully.

It is alleged in the petition that M. K. Ewers and others are members of the board of education of Goshen Township, and that George Thornburg and others are the duly elected, qualified and acting board of education of Belmont county, Ohio.

Plaintiff says that plaintiff has lived and resided in the Goshen Township School District during the time set out in the petition and that his children Howard Cook, Mildred Cook and Martha Cook resided with him during the years from September, 1925, to January, 1929; that Howard Cook was seventeen years of age at the beginning of the school term in September, 1925; that Mildred Cook was sixteen years of age at the beginning of said term;

that Martha Cook was thirteen years of age beginning with the school term in September, 1928.

Plaintiff then alleges that he lives approximately five and a half miles south of Bethesda, Ohio, in Goshen Township School District, where there is and was during the times mentioned a first class grade high school and that during all of said time there was no first grade high school nearer his residence than the Bethesda High School.

It is then alleged that Howard Cook started at the Bethesda high school in September, 1925, and attended the same daily up until the last of May, 1927, in all 340 days; that Mildred Cook started to attend the Bethesda high school in September, 1925, and continued until the latter part of November, 1925, in all 58 days and that Martha Cook started to attend the same high school in September, 1928, and continued until the middle of January, 1929, in all 95 days.

It is then alleged that each of the three children had finished the elementary course of study at the Goshen Township school and each was eligible for admission to high school work.

Plaintiff alleges that about September 1, 1925, plaintiff met with the board of education of Goshen Township and requested said board to provide transportation for his two children, Howard Cook and Mildred Cook, to said high school and that he gave said Goshen Township board of education written notice and demand to provide transportation; that the board of education of Goshen Township failed and refused to provide said transportation; that plaintiff thereupon made similar demand to provide transportation upon the Belmont County Board of Education, both boards refusing so to do.

The Belmont County board also refused, upon demand, to provide board and room for said children.

Plaintiff then alleges that he himself provided transportation for the two children, the one for 340 days and the other for 58 days.

Similar allegations are made as to Martha Cook for the period of 95 days beginning with September, 1928.

Plaintiff then asks to recover at the rate of $2.00 per

day for each of the days for which he furnished transportation for the children.

The question is raised as to whether or not the law at the time mentioned provided for such recovery.

A general reading of the school statutes leads to one apparently definite conclusion. This is that the legislature, in its various enactments, was endeavoring to supply high school facilities to every child in Ohio of high school age who had completed the elementary school work.

In construing the statutes relative to school work this objective should be kept in mind.

On the 4th day of February, 1914, the legislature passed and on February 17, the Governor approved and on February 19, 1914, there was filed in the Secretary of State's office a bill which is now identified in the General Code as Section 7749 and is still effective.

This section reads as follows:

"When the elementary schools of any rural school district in which a high school is maintained are centralized and transportation of pupils is provided, all pupils resident of the rural school district who have completed the elementary school work shall be entitled to transportation to the high school of such rural district, and the board of education thereof shall be exempt from the payment of the tuition of such pupils in any other high school for such a portion of four years as the course of study in the high school maintained by the board of education includes."

This provided for centralized high schools and made it possible for every pupil within centralization to have transportation to such centralized school.

By so centralizing the school under this provision, the board of education would be exempt from the payment of tuition of such pupils so located in any other high school as had therefore been provided for.

On the 26th day of May, 1921, there was another enactment with reference to the schools in which Section 7764-1 was a part.

This enactment was filed in the office of the Secretary of State on May 26, 1921. It provides as follows:

"Boards of education shall provide work in high school branches, as mentioned in Section 7648, General Code, at

some school within four miles of the residence of each such child for those children of compulsory school age who have finished the ordinary grade school curriculum except those who live within four miles of a high school and those for whom transportation to a high school has been provided."

This is another step toward the desired objective and is an effort to provide high school facilities at least of such character as is found in Section 7648 for all children in Ohio who fall within the statutory provisions.

Under this provision, if there was a high school within four miles of the residence of a child, that was sufficient to provide for him. If not, the transportation was required.

This enactment was deemed sufficient and satisfactory up until July 10, 1925, when its repeal became effective. Volume 111 Ohio Laws, page 125.

On the same date, that is July 10, 1925, another law went into effect which is also found in 111 Ohio Law at page 125 and was enacted as General Code, Section 7749-1, which provides as follows:

"The board of education of any district, except as provided in Section 7749, may provide transportation to a high school within or without the school district; but in no case shall such board of education be required to provide high school transportation except as follows: If the transportation of a child to a high school by a district of a county school district is deemed and declared by the county board of education advisable and practicable, the board of education of the district in which the child resides shall furnish such transportation."

This was the law in force during the periods mentioned in the petition.

It will be noticed that the board of education of any district except as provided in Section 7749, which, of course, is where there are centralized schools, may provide transportation to a high school within or without the school district.

This is upon condition that the transportation of a child to a high school by a district of a county school district is

deemed and declared by the county school board advisable and practicable.

This leaves possibly the option to the county board of education whether or not they actually supply the transportation, that is whether or not they themselves will direct the district board to employ conveyances for the transportation of children and possibly, if there were no other provisions, if the county board arrived at the conclusion that it was not practicable or advisable to furnish transportation, then the objective of the school legislation would be defeated and many children might be deprived of the opportunity of a high school education. There was no such oversight upon the part of the legislature.

General Code, Section 7610-1, passed July 24, 1925, reads as follows:

"If a board of education in a district fails in any year to estimate and certify the levy for a contingent fund as required by this chapter, or if the amount so certified is deemed insufficient for school purposes, the commissioners of the county to which such district belongs, upon being advised and satisfied thereof, shall perform any or all such duties and acts, in the same manner as the board of education by this title is authorized to perform them."

This law became effective August 6, 1921, and remains effective today with some slight changes as they appear in volume 111, page 495 of the Ohio Laws.

These enactments became effective on July 23, 1925.

The purpose of quoting these sections is to indicate the determination upon the part of the legislature to see to it that all the children in Ohio who have completed the elementary course shall have at the public's expense an opportunity for a high school education.

In *State* v. *Beamer,* 109 O. S., page 133, it is held that

"If a board of education in a district fails to provide sufficient school privileges for all the youth of school age in the district, including the privilege of having high school branches offered at some school within four miles of the district, including the privilege of having such branches made accessible to such children by transportation to or board and lodging within a district which offers such high school branches, under Section 7610-1, General

Code, a mandatory duty rests upon the county to which such district belongs to perform the acts necessary to provide such high school branches or to make the same accessible to all children of school age within the district."

The opinion delivered by Justice Allen is very enlightening upon the question of what the main objective of the legislature is in Ohio for the education of children.

Justice Allen says on page 139 that:

"A child who is not afforded the opportunity to study high school branches, therefore, has been denied some of the school privileges offered to all of the youth of the state under the general school law."

That the legislature has been determined to have every child educated is further exemplified by a compulsory educational statute. Section 7763 of our General Code, provides:

"Every parent, guardian, or other person having charge of any child of compulsory school age who is not employed on an age and schooling certificate and who has not been determined in the manner provided by law to be incapable of profiting substantially by further instruction must send such child to a public, private or parochial school for the full time the school attended is in session, which shall in no case be for less than thirty-two weeks per school year. Such attendance must begin within the first week of the school term or within one week of the date at which the child begins to reside in the district or within one week after his withdrawal from employment."

Compulsory school age shall mean six to eighteen years of age, with certain exceptions.

Another important section showing the intention of the legislature and showing a means for carrying that intention into execution is found in General Code, Section 7731-4. This law became effective on July 11, 1925, and applies in this case.

This section reads as follows:

"If a local board deems the transportation, required under any provision of law, of certain children to school by school conveyance impracticable and is unable to secure what is deemed a reasonable offer for the transportation

of such children the local board shall so report to the county board of education. If the county board of education deems such transportation by school conveyance practicable or the offers reasonable they shall inform the local board and transportation shall be provided by such local board. If, however, the county board of education agrees with the view of the local board it shall be deemed compliance with the provisions of Sections 7730, 7731 and 7764, General Code, by such local board if such board agrees to pay the parent or other person in charge of the child or children for the transportation of such child or children to school a rate determined for the particular case by the local board of education for each day of actual transportation.

It shall be the duty of the teacher or teachers in charge of such children to keep an accurate account of the days they are transported to and from school. A failure of a parent or guardian to arrange to have his child transported to school, or his failure to have the child attend on the ground that the transportation is not supplied cannot be plead as an excuse for the failure of such parent or guardian to send such child to school or for the failure of the child to attend school."

Notice what emphasis the legislature places on the importance of the education of children by the following language in the section above quoted:

"A failure of a parent or guardian to arrange to have his child transported to school, or his failure to have the child attend on the ground that the transportation is not supplied cannot be plead as an excuse for the failure of such parent or guardian to send such child to school or for the failure of the child to attend school."

It may be observed from an examination of the statutes and from these considerations that during the time complained of the legislature has carried its intention into effect and has provided the machinery whereby every child who has completed the elementary course may attend a high school at the public's expense.

The demurrer is, therefore, overruled.

Exceptions may be noted.